# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CASE No. 5:22-cv-00096-KDB-DSC

| | |
|---|---|
| **XP Climate Control LLC,** | )<br>)<br>) |
| Plaintiff, | ) |
| v. | )<br>) |
| **Intermountain Electronics Inc.** | )<br>) |
| Defendant, | )<br>) **MEMORANDUM AND**<br>) **RECOMMENDATION** |
| **Intermountain Electronics Inc.,** | )<br>) |
| Counterclaim Plaintiff, | ) |
| v. | )<br>) |
| **XP Climate Control LLC and Will D. Knight individually,** | )<br>)<br>) |
| Counterclaim Defendants. | ) |

**THIS MATTER** is before the Court on Counterclaim Defendants XP Climate Control LLC and Will D. Knight's "Motion to Dismiss Counterclaims," Doc. No. 16, filed November 21, 2022.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for consideration.

Having fully considered the arguments, record, and applicable authority, the undersigned respectfully recommends that Counterclaim Defendants' Motion to Dismiss be <u>granted in part</u> and <u>denied in part</u>.

## I. FACTUAL BACKGROUND

Accepting the factual allegations in the Counterclaim as true, Intermountain Electronics designs, manufactures, and services custom electrical and control equipment for underground

and surface mining as well as power generation. Doc. No. 8, at 15. In October 2020, Intermountain entered into a subcontract with M.A. Mortensen Company. Mortensen was the general contractor for the Valley Center Energy Storage Project in Valley Center, California. Id. at 16. The purpose of the project was to construct a facility to store electricity in several thousand lithium-ion batteries housed within fifty-one large rectangular Battery Energy Storage System enclosures. Id. Due to the volatile nature of lithium-ion batteries, they must be cooled to avoid overheating. Id. To maintain the required temperature control for the battery system, Intermountain required a customized air conditioning system to provide cooling for the BESS containers. Id.

Intermountain approached XP Climate Control about the need for air conditioning units. Id. at 17. From the outset, Intermountain notified XP of the critical timeframe for the project. Id. XP ultimately provided Intermountain a competitive quote for the air conditioning units. XP represented that it could meet both the performance and schedule requirements for the project by June 2021. Id. In January 2021, Intermountain and XP entered into a contract for the manufacture of fifty-one air conditioning units for a total sum of $3,411,000. Id. Intermountain provided XP with multiple schedules through the early stages of its work. XP repeatedly responded with affirmative representations of its ability to meet the production timeline.

The parties' business relationship soon began to degenerate. Due to XP's delays, the factory acceptance testing, which had been scheduled for May 2021, was delayed until June 10, 2021. Id. at 18. When the factory acceptance testing began, Intermountain discovered multiple performance issues with the air conditioning units. Id. XP's design did not meet the 20,000 CFM performance XP represented it could provide and did not modulate temperatures in the required nineteen to twenty-seven degrees Celsius range. Id. at 19.

The parties also ran into scheduling conflicts. In May 2021, after Intermountain had provided XP with schedule confirmations, Will Knight told Intermountain that he may be delayed in providing the air conditioning units, but that he was "planning on shipping [the units] out next week" and would ship "4–5 units every 2 weeks until the order [was] completed." Id. Concerned that Knight's plan would not satisfy the production schedule, Intermountain employee Jake Bramwell conducted a phone call with Knight where he agreed to provide five units per week. Id. Later that month, Knight emailed Intermountain explaining that XP had suffered additional delays in mass production as it awaited fan components for the units. Id. at 20. In June 2021, Knight notified Intermountain that XP had added shifts and hours in order to meet the delivery goals. Id.

In August 2021, Intermountain informed Mortenson of XP's misrepresentations and failure to meet the schedule. Id. at 22. The next day, Intermountain executives flew to XP's factory in Boone, North Carolina, to assist XP in addressing the delays. Id. Upon arriving at XP's facility, they found that contrary to Knight's representations, XP had not completed any additional units other than the six it had previously shipped. Id. They also discovered that XP had not added any additional employees or shifts. Id. Shortly thereafter, Mortensen provided Intermountain with a liquidated damages schedule showing it responsible for $2,000,000 to $4,000,000 if XP did not deliver the units by October 2021. Id. In September 2021, the parties discussed a "path to success" document that provided various good-faith guideline requirements from Intermountain in exchange for Intermountain signing a Non-Disclosure Agreement and Modification Agreement. Id. at 24.

By November 2021, the parties still had not entered into the Modification Agreement. Id. at 28. At that time, Knight emailed Intermountain an "updated version" of the Modification

Agreement, stating XP would not ship the final unit until it was signed. Id. On November 22, 2021, after incurring significant liquidated damages, Intermountain signed the agreement. Id.

From August through November 2021, XP's products contained significant defects. Id. Intermountain discovered that the air conditioning units did not meet the stated performance of 20,000 CFM or keep the batteries within the BESS enclosures cooled to the necessary temperatures. Id. Intermountain made numerous requests for assistance from XP, but XP neither supported nor responded to those requests. Id.

Plaintiff filed suit in July 2022 after the parties failed to resolve their disputes. It alleged breach of contract for the modification and non-disclosure agreements. In its Answer, Defendant filed a Counterclaim alleging breach of contract, breach of the covenant of good faith and fair dealing, breach of express warranty, breach of the implied warranty of fitness for a particular purpose, breach of the implied warranty of merchantability, fraud, negligent misrepresentation, and unfair and deceptive trade practices. Counterclaim Defendants subsequently filed their Motion to Dismiss.

## II. DISCUSSION

### a. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough

facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true); see also Wag More Dogs, LLC v. Cozart, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments.") (internal quotation marks omitted)). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal at 678–79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'

'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490 U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 F. App'x 278, 293 (4th Cir. 2013). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### b. Counterclaim Plaintiff's Fraud and Negligent Misrepresentation Claims are Barred by the Economic Loss Rule

Counterclaim Defendants seek to dismiss the fraud, negligent misrepresentation, and UDTPA claims on the basis that they are barred by the economic loss rule. The economic loss rule "prohibits recovery for purely economic loss in tort, as such claims are instead governed by contract law." Lord v. Customized Consulting Specialty, Inc., 182 N.C. App. 635, 630 (N.C. Ct. App. 2007). Under this rule, a tort action does not lie "even if that failure to perform was due to the negligent or intentional conduct of the party." Id. at 639. The doctrine was first explained by the North Carolina Supreme Court in North Carolina State Ports Authority v. Lloyd A. Fry Roofing Co., 240 S.E.2d 345, 350 (1978), rev'd on other grounds, where the Court enunciated the general rule that "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." The economic loss rule applies when a contractual remedy is sought, such as for breach of warranty. See Ellis v. Louisiana-Pac. Corp., No. 3:11CV191, 2011

WL 5402872, at *1 (W.D.N.C. Nov. 8, 2011) (citing Kelly v. Georgia-Pac., LLC, 671 F. Supp. 2d 785, 794 (E.D.N.C. 2009)).

Courts in this Circuit have frequently dismissed negligent misrepresentation and fraud claims under the economic loss rule when they arise from contractual duties. See Wireless Comm'cns, Inc. v. Epicor Software Corp., No. 3:10-cv-556-DSC, 2011 WL 90238 (W.D.N.C. Jan. 11, 2011) (dismissing negligent misrepresentation claim that defendant "tortiously made representations to induce [the plaintiff] to enter into the Agreement" because "at the heart of [the plaintiff's] claim is the performance of the contract."); United Guar. Residential Ins. Co. of N.C. v. Countrywide Fin. Corp., No. 1:09-cv-203, 2010 WL 11541968 (M.D.N.C. Sept. 2, 2010) (negligent misrepresentation claim "intimately related to [the plaintiff's] breach of contract claim" and was barred by the economic loss rule); see also Coker v. DaimlerChrysler Corp., 2004 NCBC 1, 2004 WL 32676, at *3 (N.C. Super. Ct. Jan. 5, 2004) (dismissing a common law fraud claim based on the economic loss rule).

Counterclaim Plaintiff relies on Bradley Woodcraft, Inc. v. Bodden, 795 S.E.2d 253 (N.C. Ct. App. 2016), to overcome application of the economic loss rule in this case. In that case, the North Carolina Court of Appeals held, "while claims for negligence are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred and, indeed, '[t]he law is, in fact, to the contrary: a plaintiff may assert both claims.'" Id. at 259 (citing Jones v. Harrelson & Smith Contractors, LLC, 670 S.E.2d 242, 250 (N.C. Ct. App. 2008)). In Legacy Data Access, the Fourth Circuit interpreted the court's holding in Bradley Woodcraft:

> Bradley Woodcraft is simply another application of the principle that the economic loss rule does not bar tort claims based on an independent legal duty, which is "identifiable and distinct" from the contractual duty . . . What matters is not whether a plaintiff has alleged a negligence tort or an intentional tort, but whether the defendant has breached some duty other than a contractual duty, such that the tort claim is "identifiable and distinct" from the breach of contract claim.

889 F.3d 158, 166 (4th Cir. 2018).

The issue here is whether XP and Knight owed IE a duty independent from those created by the contract. Counterclaim Plaintiff alleges Counterclaim Defendants "knowingly misrepresented [their] ability and intent to perform the contract." Doc. No. 20, at 10. In support of its allegations, Counterclaim Plaintiff points to delays in the production schedule to establish Counterclaim Defendants' misrepresentations and fraudulent conduct. But Counterclaim Defendants' intent and ability to perform the contract are necessarily intertwined with the duties therein. The economic loss rule encompasses those representations that are essential to contract performance. See United Guar. Residential Ins. Co. of N.C., 2010 WL 11541968, at *7. Thus, Counterclaim Plaintiff's negligent misrepresentation and fraud claims are barred by the economic loss rule. For those reasons, the undersigned respectfully recommends that Counterclaim Defendants' Motion to Dismiss Counterclaim Plaintiff's negligent misrepresentation and fraud claims be granted.

**c. Counterclaim Plaintiff Has Not Sufficiently Plead Unfair and Deceptive Trade Practices**

To plead a claim of Unfair and Deceptive Trade Practices, a plaintiff must allege that the defendant committed an unfair and deceptive act or practice, in or affecting commerce, that proximately caused injury. Krawiec v. Manly, 811 S.E.2d 542, 550 (2018). But a "mere breach of contract, even if intentional, is not an unfair and deceptive act." Jones v. Capitol Broad. Co., Inc., 495 S.E.2d 172, 175 (N.C. Ct. App. 1998). Rather, a party must allege "egregious or aggravating circumstances" in addition to the underlying breach of contract. Global Hookah Distrib., Inc. v. Avior, Inc., 401 F. Supp. 3d. 653, 658 (W.D.N.C. 2019). Actions that are themselves alleged to be breaches of the parties' contracts cannot support a separate UDTPA

claim. Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc., 546 F. Supp. 3d 440, 456 (M.D.N.C. 2021).

Counterclaim Plaintiff has not carried its burden of pleading egregious or aggravating circumstances to support a UDTPA claim. It does not point to any separate conduct that would rise to the level of "egregious or aggravating." Rather, the dispute here is simply a failure to abide by the agreed upon production schedule. Counterclaim Plaintiff cannot recast this alleged breach of contract as a UDTPA claim.

For those reasons, the undersigned recommends that Counterclaim Defendants' Motion to Dismiss Counterclaim Plaintiff's UDTPA claim be granted.

### d. This Court does not Consider Counterclaim Plaintiff's Defense of Economic Duress at the 12(b)(6) Stage

Counterclaim Defendants further asks this Court to dismiss Counterclaim Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, breach of the implied warranty of fitness for a particular purpose, and breach of the implied warranty of merchantability to the extent such counterclaims seek damages barred by the parties' Modification Agreement. Doc. No. 16, at 2. They argue that Counterclaim Plaintiff's defense of economic duress should be dismissed because there is insufficient evidence to support it. But at this stage of the litigation, the Court is tasked with examining the sufficiency of the pleading. "A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses." Richmond, Fredericksburg & Potomac R.R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993). Only in the rare circumstance "where all facts necessary to the affirmative defense 'clearly appear[]' on the face of the complaint may the Court consider a defense at the 12(b)(6) stage." Leonard v. Bed, Bath & Beyond, Inc., No. 5:15-cv-00284-F, 2016 WL 1064515, at *1 (E.D.N.C. Mar. 15, 2016) (quoting Richmond,

9

Case 5:22-cv-00096-KDB-SCR   Document 23   Filed 03/02/23   Page 9 of 11

Fredericksburg & Potomac R.R. Co., 4 F.3d at 250) (alteration in original)). Here, all the necessary facts relating to Counterclaim Plaintiff's defense of economic duress do not "clearly appear" on the face of the Counterclaim. For those reasons, the undersigned respectfully recommends that Counterclaim Defendants' Motion to Dismiss the First, Second, Third, Fourth, and Fifth Counterclaims be denied.

## III. RECOMMENDATION

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Counterclaim Defendants' "Motion to Dismiss Counterclaims," Doc. No. 16, be granted in part and denied in part. That is, granted as to Counterclaim Plaintiff's negligent misrepresentation, fraud, and UDTPA claims, and denied in all other respects.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of the same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right of de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315–16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845–46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Kenneth D. Bell.

**SO RECOMMENDED**.

Signed: March 2, 2023

David S. Cayer
United States Magistrate Judge